UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME SWEEZER,

    Plaintiff,

Case No. 13-cv-14382

v.

HONORABLE STEPHEN J. MURPHY, III

DANIEL HEYNS, et al.,

    Defendants.
                              /

**ORDER ADOPTING REPORT AND
RECOMMENDATION'S** (document no. 30) **RESULT,
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(document no. 21)**, DENYING SWEEZER'S MOTIONS FOR SUMMARY
JUDGMENT AND ENLARGEMENT OF TIME** (document nos. 23 & 25)**, GRANTING
SWEEZER'S MOTION TO SUPPLEMENT** (document no. 37) **AND DISMISSING CASE**

    Plaintiff Jerome Sweezer is a prisoner at the Muskegon Correctional Facility in Muskegon, Michigan. He is serving two life sentences for two counts of second degree murder, and two concurrent sentences of 40 to 80 years for armed robbery. He filed this suit against various administrators in the Michigan Department of Corrections ("MDOC" or "Defendants"), arguing the prison was not accurately applying good time and disciplinary credits to his armed robbery sentence. He contends that he "is entitled to disciplinary credits, special disciplinary credits, Emergency Power Acts (EPA's), and 238 county jail credits on his minimum" and "to have regular good time and special good time applied to his maximum sentence of 80 years." Pl.'s Mot. Summ. J. 2–3, ECF No. 23. He seeks damages, as well as declaratory and injunctive relief.

    The Defendants filed a motion for summary judgment, urging the Court to dismiss the case because Sweezer had failed to properly file an administrative grievance. The Court referred the case to Magistrate Judge Patricia Morris. The Magistrate filed a Report and

Recommendation, advising the Court to dismiss the case because a prisoner seeking restoration of disciplinary credits can be addressed only in a habeas corpus petition, not an action under 42 U.S.C. § 1983. Sweezer filed a timely objection to the Magistrate's Report. The Court then ordered the Defendants to file a brief addressing the merits of Sweezer's complaint. Order, ECF No. 34. The Defendants filed such a brief, with an accompanying affidavit from the Records Administrator explaining the sentencing computation. Resp., ECF No. 35.

## STANDARD OF REVIEW

The Magistrate Judge advised the Court to sua sponte dismiss Sweezer's complaint because a request for application of good time credits must be brought as a Writ of Habeas Corpus, not as a civil rights action. When a pro se prisoner brings suit in federal court, the Court is obligated to screen the complaint to ensure it is not "frivilous, malicious, [or] fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1); *see also* 28 U.S.C. § 1915(e)(2)(B). A complaint is "frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). In addition, "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock,* 549 U.S. 199, 215 (2007).

The Defendants also filed a motion for summary judgment, arguing Sweezer failed to exhaust his administrative remedies. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A

dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show that a fact is, or is not, genuinely disputed, both parties are required to either "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court must take care, in evaluating the motion, not to make judgments on the quality of the evidence, because the purpose of summary judgment is to determine whether a triable claim exists. *Doe v. Metro. Nashville Pub. Schs.*, 133 F.3d 384, 387 (6th Cir. 1998) ("[W]eigh[ing] the evidence . . . is never appropriate at the summary judgment stage.").

## DISCUSSION

The current case presents three issues. First, whether Sweezer's request for the MDOC to properly apply good time and disciplinary credits can be brought as a civil rights action under 42 U.S.C. § 1983, or whether it is cognizable only under the habeas corpus statute. Second, whether Sweezer properly exhausted his administrative remedies. And finally, it addresses the merits of Sweezer's complaint—whether the MDOC deprived Sweezer of the credits to which he is entitled. The Court finds that Sweezer's claims may be brought under Section 1983, that he properly exhausted his administrative remedies, but that the MDOC is correctly calculating his sentence.

3

I. <u>Sweezer May Bring His Claim Under Section 1983</u>

Section 1983 provides a private cause of action against state officials acting "under color of state law" that deprive persons of "a right secured by the Federal Constitution or laws of the United States." 42 U.S.C. § 1983. The parties do not dispute that the prison administrators acted "under color of state law" when they calculated Sweezer's good time and disciplinary credits. Furthermore, the Supreme Court has recognized that prisoners have a liberty interest in the correct application of jail credits to their sentences. *See Wilkinson v. Dotson*, 544 U.S. 74 (2005).

The Supreme Court has held, however, that when the application of good time credits necessarily results in the prisoner's "immediate release from physical custody" or "in shortening the length of their actual confinement in prison, habeas corpus [is] their appropriate remedy." *Preiser v. Rodriguez,* 411 U.S. 475, 487 (1973). In *Preiser*, three prisoners argued the correction facility unconstitutionally deprived them of good time credits without due process of law. Restoration of the credits would have entitled each of the three prisoners to immediate release on parole. The Court held that the prisoners could only proceed under the habeas statute, because the prisoners' grievance was that they were being "unlawfully subjected to physical restraint." *Id.* at 486–87. Such a claim fell "squarely within [the] traditional scope of habeas corpus," and was therefore not cognizable as a civil rights claim under Section 1983.

In *Wilkinson v. Dotson,* by contrast, a prisoner brought suit against prison administrators arguing that the retroactive application of harsher guidelines to his pre-guidelines case violated the Constitution's Ex Post Facto and Due Process Clauses. 544 U.S. at 77. As relief, Dotson sought "an immediate parole hearing in accordance with the

4

statutory laws and administrative rules in place when [he] committed his crimes." *Id.* Ohio parole officers argued Dotson could only bring suit under the habeas statute, not Section 1983. The Court disagreed, explaining that "[s]uccess for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed consideration of a new parole application." *Id.* at 82. Indeed, "[s]uccess for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term." *Id.* Such a remedy—which "neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody"—was far removed from the traditional scope of habeas review, and was therefore properly brought under Section 1983. *Id.* at 86 (Scalia, J., concurring).

In this case, a judge sentenced Sweezer to two life terms for murder, and two concurrent terms of 40 to 80 years imprisonment for armed robbery. Sweezer argues the MDOC is not applying disciplinary credits to his 40 year minimum, and incorrectly calculating good time credits to decrease his 80 year maximum (for armed robbery). If the Court agrees, it will not entitle Sweezer to immediate release from prison or necessarily shorten the duration of his imprisonment. Rather, a finding by the Court that MDOC is incorrectly calculating his minimum, would only result to hasten Sweezer's eligibility for parole. And if the Court finds that MDOC is incorrectly computing Sweezer's 80 year maximum, it will not necessarily shorten his term of imprisonment because he is also serving a life sentence for murder. Thus, because the sought after remedy will not result in Sweezer's immediate release, or necessarily result in a shorter prison sentence, his claim is properly brought under 42 U.S.C. § 1983.

II. <u>Sweezer Properly Exhausted His Administrative Remedies</u>

The Defendants' motion for summary judgment urges the Court to dismiss Sweezer's case because Sweezer failed to exhaust his administrative remedies. Sweezer filed a Step I grievance explaining that he thought the prison was incorrectly computing his sentence. Mot. Summ. J., Grievance, ECF No. 21-4. The MDOC addressed the merits of Sweezer's arguments and explained how it calculated the duration of incarceration. Sweezer appealed the decision and filed a Step II grievance, raising the same arguments. The Defendants once more responded to the merits of Sweezer's arguments. Sweezer again appealed and filed a Step III grievance, which the prison summarily dismissed, stating that it had already explained how it calculated Sweezer's sentence during the Step I and Step II grievances. Sweezer then filed the present suit. The Defendants now contend Sweezer did not properly exhaust his administrative remedies because his Step I grievance did not include the names of each defendant.

The Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate "exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo,* 548 U.S. 81, 90, 95 (2006)).

6

The MDOC has a three step grievance procedure. Mot. Summ. J., P.D. 03.02.130, ECF No. 21-2. The Policy Directive outlining that procedure states that the "[d]ates, times, places and names of all those involved in the issue being grieved are to be included" in the Step I grievance. Mot. Summ. J., P.D. 03.02.130R, ECF No. 21-2. Because Sweezer's Step I grievance does not include the Defendants' names, they argue Sweezer did not properly exhaust his administrative remedies.

The issue, therefore, is whether Sweezer's failure to include Defendants' names in his Step I grievance precludes federal review, notwithstanding the Defendants' decision to address the merits of his grievance. The Sixth Circuit has squarely held that when a prison addresses the merits of an inmate's grievance, the prisoner has exhausted his administrative remedies, notwithstanding the grievance's technical deficiencies. *Reed-Bey,* 603 F.3d at 325–26. In *Reed-Bey*, an inmate filed a grievance, arguing that prison staff provided inadequate medical treatment. He did not provide the staff members' names in his grievance. Nonetheless, prison authorities addressed the merits of his complaint. When Reed-Bey filed suit, the prison staff argued that he had not exhausted his administrative remedies because the grievance did not include their names.

The Sixth Circuit held the inmate properly exhausted his administrative remedies, notwithstanding his failure to include the staff members' names in his Step I grievance. *Id.* at 325–26. It explained that the prison had the first opportunity to address the merits of the prisoner's complaint and the review process had created an adequate administrative record. Furthermore, "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will [federal courts]." *Id.* at 325. Moreover, "[e]nforcing internal prison rules even when

7

prison officials do not and even when they proceed to address a grievance on the merits . . . would do more than ensure that prison officials get the first shot at correcting their own mistakes; it would give their merits-based grievance denials undeserved insulation from federal review." *Id.* at 326.

*Reed-Bey* is directly applicable to this case. Sweezer filed a grievance, contending the prison was miscalculating his sentence. The prison addressed the merits of his complaint. Sweezer then appealed and filed a Step II grievance. Once more, the prison addressed the merits of Sweezer's grievance by explaining how they calculated his sentence range. Sweezer appealed once more, and the prison again addressed the merits. The prison has had a fair shot at correcting its own alleged mistakes. It has created a valuable administrative record. And, as in *Reed-Bey,* the Defendants are merely seeking to insulate their merits-based grievance denial from federal review. Accordingly, the Court finds that Sweezer exhausted his administrative remedy.

III.   The MDOC Properly Calculated Sweezer's Sentence

The Court ordered the Defendants to file a brief on the merits of Sweezer's complaint. Order, ECF No. 34. The Defendants then filed a short brief explaining the basis for Sweezer's sentence, and included an affidavit from Diana Judge, a Records Administrator at the prison. After reviewing the affidavit and brief, the Court finds the MDOC correctly computed Sweezer's sentence.

To reiterate, Sweezer is serving a life sentence for two counts of second degree murder and a concurrent term of 40 to 80 years for two counts of armed robbery. Sweezer maintains he is entitled to good time and disciplinary credits that will decrease his sentence for armed robbery. The analysis is somewhat convoluted because Michigan has different

sentencing schemes depending on whether a person is sentenced to life imprisonment or a term of years. The sentencing scheme is counter-intuitive because a person sentenced to life imprisonment will often be eligible for parole earlier than a person sentenced to a term of years. In an effort to disambiguate, the Court will separately examine the minimum and maximum terms for the life sentence and sentence of 40 to 80 years.

A. <u>Term Of Life</u>

A judge sentenced Sweezer to a term of life imprisonment for second degree murder. Under Michigan Law, "[a] prisoner sentenced to imprisonment for life . . . is subject to the jurisdiction of the parole board and may be placed on parol" if "the prisoner has served 10 calendar years of the sentence for a crime committed before October 1, 1992." Mich. Comp. Laws § 791.234(7)(a). The Michigan Department of Corrections agrees that, had Sweezer only been sentenced for murder, he would have been eligible for parole on October 21, 1991, ten years after his initial incarceration. Resp., Judge Aff. ¶¶ 12, 13, ECF No. 35-4.

While inmates sentenced to life imprisonment have the opportunity to be paroled after only ten years, their maximum possible penalty never changes—the Michigan Department of Corrections can keep them incarcerated for life. The policy directives clearly state that prisoners serving life sentences can not earn good time and disciplinary credits. Resp., Policy Directive 03.01.100 ¶ E.1, Policy Directive 03.01.101 ¶ G.1, ECF Nos. 35-2, 3.

In short, if the judge had only sentenced Sweezer to life, Sweezer would have become eligible for parole in 1991, though the Michigan Department of Corrections would have had the power to keep him incarcerated for life.

B. <u>Sentence Of 40 To 80 years</u>

The judge also sentenced Sweezer to a term of 40 to 80 years imprisonment for two counts of armed robbery. Michigan law provides that prisoners sentenced to a range of years are "subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted, less good time and disciplinary credit." Mich. Comp. Laws. § 791.234. The scheme is counter-intuitive because a prisoner sentenced to 40 to 80 years imprisonment will often be eligible for parole later than other prisoners sentenced to life (who are eligible for parole after only ten years).

Here, the parole board will have jurisdiction over Sweezer once he has served his 40 year minimum sentence, "less good time and disciplinary credit." *Id.* The next question, therefore, is whether Sweezer is entitled to any good time or disciplinary credits. Section 791.233b provides that a person convicted and sentenced for armed robbery is not entitled to any good time credit decreasing that prisoner's minimum sentence. Mich. Comp. Laws. § 791.233b(x). Section 800.33 states, however, that a prisoner serving a sentence for armed robbery is "eligible to earn a disciplinary credit of 5 days per month for each month served after December 30, 1982. Accumulated disciplinary credits shall be deducted from a prisoner's minimum and maximum sentence in order to determine his or her parole eligibility dates." Mich. Comp. Laws § 800.33(3).

The Defendants' brief and accompanying affidavit do not disclose whether Sweezer has earned any disciplinary credits, or whether those credits have been applied to determine Sweezer's parole eligibility date. Nonetheless, it appears from the MDOC's response to his grievances that they did include disciplinary credits to determine his parole

eligibility, stating Sweezer would not be "parole eligible on the 40 year minimum term until at least 04/28/2012 . . . . The potential date of 04/28/2012 calculation includes regular and special disciplinary credits." Mot. Summ. J., Grievance 4, ECF No. 21-4. A subsequent audit showed the parole board anticipated having jurisdiction over Sweezer's sentence on August 8, 2014. Pl.'s Resp. 14, ECF No. 36.

These estimates demonstrate MDOC is including disciplinary credits when calculating Sweezer's minimum sentence calculation. Because Sweezer was originally incarcerated in 1981, his minimum sentence without inclusion of credits would run until 2021. The earlier estimated dates of 2012 and 2014 show that the prison is applying disciplinary credits to his sentence. Nothing in Sweezer's extensive briefing suggests that they have applied too few credits to his minimum term.

Sweezer also argues extensively that the prison has incorrectly calculated when his sentence for armed robbery will end. MDOC, however, has repeatedly explained its calculations. *See* Resp., Judge Aff. ¶¶ 12, 13, ECF No. 35-4. The prison has applied the applicable credits to Sweezer's 80 year armed robbery sentence, which is expected to terminate in 2026 (after only 45 years). *Id.* The Court finds no error in these calculations, and Sweezer has not provided any basis for calculating his maximum on the armed robbery sentence differently. Furthermore, as the MDOC has repeatedly explained, it does not matter when Sweezer's sentence for the armed robbery expires because he is also serving a life sentence for murder. Even if the Court completely invalidated Sweezer's armed robbery conviction, the MDOC could still hold him indefinitely because he is serving a life sentence.

11

## CONCLUSION

The Court finds that Sweezer properly brought a claim for the application of jail credits under 42 U.S.C. § 1983. Furthermore, Sweezer has properly exhausted his administrative remedies. Nonetheless, Sweezer's arguments fail on the merits. The MDOC has applied disciplinary credits to his 40 year minimum sentence to determine when he becomes eligible for parole. They also correctly determined the date that his armed robbery sentence expires. The Court reiterates, however, that MDOC may hold Sweezer indefinitely because he is serving a life sentence for murder. Thus, even once Sweezer's armed robbery sentence ends, it does not necessarily mean he will be released from prison. Accordingly, because the MDOC is correctly computing Sweezer's prison sentence, the Court will dismiss the case.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Court **ADOPTS** the Report and Recommendation's result (document no. 30), though not its reasoning, and will **DISMISS THE CASE WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court will **DENY** the Defendants' Motion For Summary Judgment (document no. 21).

**IT IS FURTHER ORDERED** that the Court will **DENY** Sweezer's Motion For Summary Judgment (document no. 23).

**IT IS FURTHER ORDERED** that the Court will **DENY AS MOOT** Sweezer's Motion for Enlargement of Time (document no. 25).

**IT IS FURTHER ORDERED** that the Court will **GRANT** Sweezer's Motion to Supplement Record (document no. 37).

**SO ORDERED**.

                                           s/Stephen J. Murphy, III
                                           STEPHEN J. MURPHY, III
                                           United States District Judge

Dated: January 31, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 31, 2015, by electronic and/or ordinary mail.

                                           s/Carol Cohron
                                           Case Manager